1

2

3

4

5

6

7                                        IN THE UNITED STATES DISTRICT COURT

8                                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9    DEVONTE B. HARRIS,

10                        Plaintiff,                          No. CIV S-09-1523 GGH P

11               vs.

12   L. ZAMUDIO, et al.,                                     ORDER &

13                        Defendants.                        FINDINGS AND RECOMMENDATIONS

14   _____/

15   Introduction

16                 Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

17   1983.  Pending before the court is defendants' motion to dismiss, filed on September 7, 2010, to

18   which plaintiff filed an opposition after which defendants filed a reply.

19   Plaintiff's Allegations

20                 In his second amended complaint, plaintiff alleges that there were several

21   incidents of physical altercations between Bloods and Crips in the fall and winter of 2004 at

22   California State Prison - Sacramento (CSP-Sac) and that there was a prison riot on April 10,

23   2005 in C-Facility involving Bloods and Crips, in which plaintiff was not involved but in which

24   defendant Zamudio took an active part in quelling the riot, such that he had direct knowledge of

25   the potential for future violence.  Second Amended Complaint (SAC), pp. 4-5.  Plaintiff alleges

26   that on June 14, 2005, when Bloods and Crips were released to the yard for the first time

                                                          1

1  following the riot, defendant Zamudio, heading toward the door exiting to the yard, observed an

2  inmate palming what appeared to be an inmate-manufactured weapon, but did not press an alarm

3  or otherwise alert staff.  Id., at 5-6, 19.  By not acting appropriately, plaintiff alleges that

4  defendant Zamudio failed to protect him in violation of plaintiff's Eighth Amendment rights

5  from being the victim of a stabbing assault, when Zamudio only activated his alarm after the riot

6  started.  Id., at 7, 12.  Plaintiff suffered puncture wounds to his stomach and right shoulder, blunt

7  trauma to his face, abrasions on his left leg and his knees; following his ambulance transport to

8  the hospital it was discovered that plaintiff's left lung had collapsed and he had sustained a minor

9  liver injury.  Id.  Plaintiff had several surgeries during nine days of hospitalization.  Id.

10         Plaintiff alleges that defendants Walker, Forester and Hill deprived him of

11  outdoor exercise from June 23, 2005 (following his return from the hospital) until August 4,

12  2005, a period of six weeks; plaintiff indicates he was to have normal activity as of June 27,

13  2005.  SAC, pp. 7-13.  These defendants were members of a classification committee who had

14  the responsibility to classify him while he was in administrative segregation (Ad Seg) and to

15  assign him to a yard group so that he could receive outdoor exercise, but failed to do so.  Id., at

16  10.  This deprivation was a violation of plaintiff's Eighth Amendment rights.  Id., at 12-13.

17  Plaintiff seeks declaratory relief and money, including punitive, damages.  Id., at 3.

18  <u>Motion to Dismiss</u>

19         Defendants move for dismissal, under non-enumerated Fed. R. Civ. P. 12(b) and

20  under Fed. R. Civ. P. 12(b)(6), on the following grounds: 1) plaintiff failed to exhaust his

21  administrative remedies before filing suit against defendant Zamudio; 2) plaintiff fails to state a

22  claim as to defendants Walker, Hill and Forester; and 3) defendants are entitled to qualified

23  immunity.  Notice of Motion; Motion to Dismiss (MTD), p. 2.

24         *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

25         In a motion to dismiss for failure to exhaust administrative remedies under non-

26  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

1    raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.

2    2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

3    penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

4    record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

5    notice by Order, filed on June 3, 2010 (docket # 25).

6          Should defendants submit declarations and/or other documentation demonstrating

7    an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

8    Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

9    complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

10   the court's attention those parts of the complaint upon which plaintiff relies.  If the court

11   determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

12   remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

13        *PLRA Requirements*

14        The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

15   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

16   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

17   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

18   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

19   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

20   inmates must exhaust administrative remedies, regardless of the relief offered through

21   administrative procedures.  Therefore, inmates seeking money damages must also completely

22   exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

23   seeking money damages are required to exhaust administrative remedies even where the

24   grievance process does not permit awards of money damages).  The United States Supreme Court

25   has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

26   complete the administrative review process in accordance with the applicable procedural rules.

1  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

2  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

3  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

4  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

5  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

6  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

7  or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.   Moreover, 42 U.S.C. § 1997e(a)

8  provides that no action shall be brought with respect to prison conditions *until* such

9  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

10  Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010)(PLRA exhaustion

11  requirement satisfied with respect to new claims within an amended or supplemental complaint

12  so long as administrative remedies are exhausted prior to the filing of the amended or

13  supplemental complaint).

14        *Administrative Exhaustion Procedure*

15        In order for California prisoners to exhaust administrative remedies, they must

16  proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

17  CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

18  third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

19  985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

20  decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

21  Defendant Zamudio

22        Plaintiff's first appeal claiming defendant Zamudio failed to take reasonable steps

23  to protect him when he failed to activate an alarm upon observing a weapon in another inmate's

24  hand, ultimately resulting in the injuries plaintiff suffered during the June 14, 2005,[1] riot was

25  ───────────────────

26  [1] Defendant Zamudio incorrectly dated the riot causing the injuries as having occurred on
   June 24, 2005.  Motion to Dismiss, p. 3.

filed on August 16, 2005.[2]  MTD, p. 3, Declaration of A. Pereira, an appeals coordinator at CSP-Sac, Exhibit A, docket # 30-4, p. 6.[3]  The informal level of review was bypassed and on September 23, 2005, the appeal was denied at the first level for plaintiff's failure to have provided sufficient evidence of defendant Zamudio's negligence with regard to his duties.  Id., at 5.  Plaintiff appealed the decision to the second level of review on October 11, 2005, and the appeal to the second level was denied on November 7, 2005, once again for insufficient evidence.  MTD, p. 3, Pereira Dec., Exh. B, dkt. # 30-4, pp. 37-39.[4]

Defendant, citing the declaration of D. Foston, chief of the inmate appeals branch in Sacramento, points out that plaintiff then had fifteen (15) working days to appeal to the final third level of review.  MTD, p. 3, Foston Dec., dkt. # 30-2, ¶8.  Foston avers that the IAB will allow late appeals if the appeal is filed within a reasonable time period but that if it is screened out as untimely, it is not fully exhausted because it never reaches the final level of review.  Foston Dec. at ¶¶ 8-9.

Defendant Zamudio maintains that plaintiff was in general population at CSP-Sac, from October 23, 2005, until December 4, 2005, the only exception being that he was temporarily released to the California Medical Facility on November 4, 2005, but was returned to CSP-Sac the same day.  MTD, pp. 3-4, Declaration of Deputy Attorney General Jarhett Blonien, counsel for defendants, Exh. B, dkt. # 30-3, p. 10.[5]  Plaintiff submitted his first appeal to third level on May 1, 2006, which was screened out and never reviewed due to untimeliness.  MTD, p.

---

[2] While the form is file-stamped August 16, 2005, plaintiff dated the 602 as filed on August 15, 2005, which is no doubt why plaintiff refers to Aug. 15, 2005 as the date the appeal was filed.

[3] The court's electronic pagination system is referenced.

[4] The entire second level appeal appears to have been comprised of pages 39-52 in dkt. # 30-4.

[5] These movement history records were certified/authenticated by affidavit of the custodian of records at CSP-Corcoran.  Blonien Dec., Exh. A, dkt. # 30-3.

4, Foston Dec., Exh. A, dkt. # 30-2, p. 7.  Defendant Zamudio notes that plaintiff concedes that

his failure to protect claim was not administratively exhausted in his second amended complaint.

MTD, p. 4, see SAC, p. 2.

    In his opposition, plaintiff states that he did not have a reasonable opportunity to

comply with time constraints and provided a written explanation to the third level of review, but

his appeal was summarily denied without any investigation to determine whether plaintiff was

deprived of a reasonable opportunity to appeal timely.  Opposition (Opp.), p. 2.  Plaintiff notes

that he did not file his initial appeal until two months after the riot in which he was injured after

he was exonerated from having participated in the June 14, 2005, riot and the appeal, as noted

above, was processed through the first and second levels.  Id., at 3.  Plaintiff states that he did not

receive his second level appeal response until November 21, 2005, not as dated on the appeal,

November 9, 2005, a discrepancy he claims is common.  Id., at 3, 6.  (Actually, defendant dates it

as November 7, 2005).  However, this point is not particularly germane in light of plaintiff's

having failed to file the third level appeal until May of 2006.  In any event, plaintiff indicates that

his calculation for the response time was from November 21, 2005, and he states that while he

wrote his response to the second level denial on November 23, 2005, he did not file the third

level appeal at that time due to a lack of postage.  Id., at 4, Exh. A, plaintiff's Declaration, dkt #

37, ¶ 8.  He avers that on December 4, 2005, when he was sent to Ad Seg, his appeal was among

the personal property that was inventoried and stored.  Id. at ¶ 9.  On February 22, 2006, he was

transferred to Pelican Bay State Prison (PBSP) Ad Seg; his appeal was not among the personal

property issued to him and he only obtained it after putting in several requests.  Id. at ¶¶10-11.

Plaintiff explained why his appeal was late to the third level appeal reviewer, but it was

nevertheless screened out as untimely on May 1, 2006.  Id at ¶ 12.  Thereafter, he re-submitted it,

explaining again why it had not been filed timely, but it was again screened out as untimely on

May 31, 2006.  Opp., at 4-5, plaintiff's Dec., dkt # 37 at ¶ 12-13.  This is substantiated by the

records submitted by defendant.  See MTD, Foston Dec., Exh. A, dkt. # 30-2, p. 7.

1    Plaintiff cites Cal. Code Regs. tit.xv, § 3084.3(c)(6), which he avers states appeals

2   can be screened out if times limits are exceeded and the appellant had the opportunity to file

3   within prescribed time constraints;[6] and the DOM[7] § 54100.8.1, that provides that the appeal

4   coordinator is to "ensure that an inmate ... had, in fact, the opportunity to file in a timely

5   manner"[8] before screening it out as untimely. Opp., p. 6. Plaintiff also maintains that he was

6   subjected to many moves during the pendency of his appeal, arguing that the movement history

7   attached to defendant's exhibit, Blonien Dec., Exh. B, does not take account of moves from cell

8   to cell and building to building. Id., at 6-7.

9    In reply, defendant counters that plaintiff's excuses for late filing lack merit and

10   that he had more than adequate time to file his third level appeal. Reply, pp. 2-5. Defendant

11   points to Cal. Code Regs. tit.xv, § 3138 (2010),[9] which upon the request of an indigent inmate,

12   directs that writing supplies and postage for up to five first-class letters a week be provided. Id.,

13   at 4. Defendant also cites Cal. Code Regs. tit.xv, § 3084.7(c) (2010), which defendant contends

14   allows for the appeals coordinator to fax an inmate's third level review appeal.[10] Id. Defendant

15   points out that there were 11 days between the time that plaintiff indicates he wrote his response

16

17    [6] From the court's research, there currently is no such subsection, although § 3084.3(c)

18   permits an inmate whose appeal has been rejected for failing to attach all supporting documents
     necessary an additional 30 days to obtain the necessary documents and resubmit the appeal and §

19   3084.3(d) permits the appeals coordinator to grant further time extensions beyond the initial 30-
     day extension should the inmate provide a reasonable explanation as to why supporting

20   documents are still not available.

21    [7] Department Operations Manual.

22    [8] Quoting DOM § 54100.8.1 in relevant part.

23    [9] Defendant does not make clear that this provision existed at the time relevant for
     plaintiff in 2005-2006.

24    [10] The court is unable to locate the 2010 version of Cal. Code Regs. tit.xv, § 3084.7(c)

25    as described by defendant in the Westlaw/Lexis electronic databases even though both indicate
     the regulation is current through 2011. Local Rule 133(i)(3) requires that, inter alia, regulatory
     authority relied on that is not available through Westlaw/Lexis "shall be appended to the brief or

26   other document in which the authority is cited." The court cannot locate any such document.

1   to the second level review on Nov. 23, 2005, and the time he was placed in Ad Seg, on Dec. 4,

2   2005.  Id.  In addition, defendant contends that inmates in Ad Seg can make timely appeals, and

3   point to plaintiff's own appeal that he exhausted while in Ad Seg, attached to his opposition.  Id.,

4   citing Opp., at 48.

5           <u>Analysis</u>

6           It is not at all clear that plaintiff would have had the opportunity either to receive

7   the postage to mail out his third level inmate appeal in November of 2005, or to have it faxed

8   when defendant points to regulations that would permit postage and faxing that apparently date

9   from 2010.  Nevertheless, while plaintiff may well have encountered difficulty in his effort to

10  process his appeal to the third level, the court must agree with defendant that plaintiff had an

11  adequate opportunity to file a timely appeal to the third level when he had it written by

12  November 23, 2005, and was not placed in Ad Seg until December 4, 2005.  The court notes that

13  among the reasons for which an appeal may be cancelled includes the situation where the time

14  limit is exceeded even though the inmate "had the opportunity to submit within the prescribed

15  time constraints."  CAL. CODE REGS. tit.xv, § 3084(c)(4).  Moreover, while he was placed in Ad Seg

16  at CSP-Sac, presumably before his transfer to PBSP on February 22, 2006, he was evidently able

17  to process another inmate appeal.  The appeal defendant cited as evidence provided by plaintiff

18  himself that demonstrates he could file an inmate appeal and administratively exhaust a claim

19  while in Ad Seg, shows that plaintiff filed a 602 appeal (log no. SAC-C- 05-01721) on July 20,

20  2005, seeking the return of his tennis shoes and sweatshirt that had been confiscated following

21  the June 14, 2005, incident.  Opp., p. 32.  Following the August 9, 2005, informal level denial,

22  plaintiff filed his first formal level appeal on September 12, 2005.  Id.  Following the first level

23  response, plaintiff appealed to the second level on October 20, 2005.  Id. at 33.  The second level

24  denial is dated December 5, 2005 (apparently a day after he had been placed in Ad Seg at CSP-

25  Sac).  Id. at 44.  The third level appeal denial of log no. SAC-C- 05-01721 is dated April 7, 2006.

26  Id. at 48.  It is evident that plaintiff's appeal to the third level had to have been made subsequent

to his placement in Ad Seg.  Plaintiff's ability to process this appeal timely significantly

undermines plaintiff's representation that circumstances precluded his ability to file the

administrative appeal at issue within a more reasonable time.  Pursuant to Woodford v. Ngo,

supra, at 84, 126 S. Ct. at 2382, plaintiff's third level appeal with regard to defendant Zamudio,

screened out as untimely some five months beyond the deadline, simply does not satisfy the

administrative exhaustion requirement and this defendant and claim must be dismissed.

### *Legal Standard for Fed. R, Civ. 12(b)(6) Motion*

        In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

it must contain factual allegations sufficient to "raise a right to relief above the speculative

level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

pleading must contain something more...than...a statement of facts that merely creates a suspicion

[of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

        In considering a motion to dismiss, the court must accept as true the allegations of

the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421,

89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

that general allegations embrace those specific facts that are necessary to support the claim.'"

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

(1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

1   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2   Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

3           The court may consider facts established by exhibits attached to the complaint.

4   Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

5   consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

6   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

7   papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

8   1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

9   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

10          A pro se litigant is entitled to notice of the deficiencies in the complaint and an

11  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

12  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

13          Defendants Forsterer, Hill and Walker

14          Defendants argue that they are entitled to qualified immunity for plaintiff's claims

15  of a deprivation of outdoor exercise for six weeks in violation of the Eighth Amendment.  MTD,

16  pp. 12-14.  Defendants also quote from a prior screening order of this court in this case wherein

17  the undersigned had stated that plaintiff's claim that he did not receive yard for "perhaps a period

18  of six weeks...does not state a constitutional deprivation, particularly where there is a clear

19  inference to be drawn that plaintiff appears to have been recuperating from one or more stab

20  wounds during this period."  MTD, p. 7, quoting Order, filed on September 25, 2009, p. 5.

21          Plaintiff counters that the defendants' failure, as the classification committee

22  responsible for his yard group assignment, to classify him and assign him to a yard group led to

23  his not receiving yard time while he was in Ad Seg, linking them directly to his alleged exercise

24  deprivation.  Opp., pp. 11-12.  Plaintiff claims that the classification chrono he has attached as

25  Ex. G (p. 37) to his second amended complaint is "forged."  Id. at 12.  The chrono, dated June

26  29, 2005, appears to have been signed by defendants Walker and Forsterer and includes, inter

1   alia, defendant Hill as a member of the Ad Seg Unit (ASU) Institutional Classification

2   Committee (ICC), and states that plaintiff declined to appear before the ICC for his initial ASU,

3   but that he received the appropriate notice and the hearing was held in absentia.  SAC, Ex. G, p.

4   37.  It recounts that following his transport to the hospital on June 14, 2005, he was placed in Ad

5   Seg on June 23, 2005 for "participation in a riot."  Id.  It states that he would be retained in Ad

6   Seg in a single cell and walk-alone yard, pending adjudication of a rules violation report for

7   participation in a riot.  Id.  However, the chrono then goes on contradictorily to state the June 14,

8   2005 RVR had been adjudicated and plaintiff had been found guilty.  Id.  However, this is not

9   substantiated by another exhibit plaintiff attached to his second amended complaint, wherein

10  plaintiff was found not guilty of participation in the June 14, 2005 riot at the RVR hearing and

11  the charge was dismissed.  SAC, Ex. A, p. 17.  Moreover, the date of the disposition appears to

12  have been July 18, 2005, which is some weeks after the June 29, 2005 ICC chrono wherein it is

13  indicated that plaintiff had already been found guilty.  Plaintiff, however, is focused on the

14  representation that he received walk-alone yard, which he insists simply did not occur.  Opp., p.

15  13.  Plaintiff also asserts that the ICC chrono shows that defendants in no way evidenced any

16  concern for his health and did assign him to walk-alone yard, which he continues to insist never

17  occurred, such that his failure to have been provided any yard cannot be attributed to any effort

18  by defendants to make sure he was recuperated.  Id. at 12.  He also makes the point that medical

19  staff had discharged him on June 27, 2005, from the treatment center and returned him to

20  "'normal activity'" and it would not have been within the non-medical defendants' purview to

21  restrict his yard access for a medical reason.  Id. at 14, citing SAC, Ex. F, p. 35.

22          In reply, defendants contend that plaintiff fails to allege adverse effects from the

23  deprivation of outdoor exercise or to demonstrate defendants' deliberate indifference.  Reply, pp.

24  5- 8.

25  \\\\

26  \\\\

1    *Qualified Immunity*

2        In resolving a claim for qualified immunity the court addresses two questions: (1)

3    whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the

4    officers' actions violated a constitutional right and (2) whether a reasonable officer could have

5    believed that his conduct was lawful, in light of clearly established law and the information the

6    officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).   Although the

7    Supreme Court at one time mandated that lower courts consider these two questions in the order

8    just presented, more recently the Supreme Court announced that it is within the lower courts'

9    discretion to address these questions in the order that makes the most sense given the

10   circumstances of the case.  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

11   *Eighth Amendment - Outdoor Exercise*

12        Although a temporary denial of exercise does not per se constitute an Eighth

13   Amendment violation, denial of all outdoor exercise for an extended period may.  May v.

14   Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (temporary deprivation of 21 days without outdoor

15   exercise with no medical effects not a substantial deprivation); Hayward v. Procunier, 629 F.2d

16   599, 603 (9th Cir. 1980) (30-day emergency lockdown period was an unusual circumstance

17   justifying denial of outdoor exercise); see also LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th

18   Cir. 1993) (while exercise is "one of the basic human necessities protected by the Eighth

19   Amendment," where restriction from outdoor exercise arose from inmate's abuse of the privilege

20   and posing a security risk, plaintiff's Eighth Amendment claim for deprivation thereof failed);

21   but see, Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) (upholding district court

22   decision that inmates confined with almost total lack of outdoor exercise for period of years was

23   cruel and unusual punishment, and requiring they be allowed one hour of outdoor exercise, five

24   days a week, absent poor weather, unusual circumstances); see also, Keenan v. Hall, 83 F.3d

25   1083, 1090 (9th Cir. 1996) (defendants not entitled to summary judgment where plaintiff

26   produced evidence showing deprivation of outdoor exercise for six-month period in

12

administrative segregation).   The Ninth Circuit has clarified the elements necessary to state a

deprivation that would rise to the level of an Eighth Amendment violation:

> An Eighth Amendment claim that a prison official has deprived
> inmates of humane conditions must meet two requirements, one
> objective and one subjective.  Allen v. Sakai, 48 F.3d 1082, 1087
> (9th Cir.1995). "Under the objective requirement, the prison
> official's acts or omissions must deprive an inmate of the minimal
> civilized measure of life's necessities. The subjective requirement,
> relating to the defendant's state of mind, requires deliberate
> indifference." Id. (citations omitted).

Lopez v. Smith, 203 F.3d 1122, 1132-1133 (9th Cir. 2000).

In Lopez, the Ninth Circuit found that plaintiff's claim that he was denied all

outdoor exercise for six and a half weeks met the objective requirement for an Eighth

Amendment claim.  1132-1133.  The Lopez court noted that:

> The clear implication of May is that temporary denials of outdoor
> exercise must have adverse medical effects to meet the Eighth
> Amendment test, while long-term deprivations are substantial
> regardless of effects.

Lopez v. Smith, 203 F.3d at 1133 n. 15 (see May v. Baldwin, supra).

The Ninth Circuit reversed a district court finding that denial of out-of-cell

exercise for nearly fourteen months did not demonstrate a genuine issue of material fact as to

deliberate indifference.  On the other hand, the Ninth Circuit has also found prison officials to be

entitled to qualified immunity for extended deprivation of outdoor exercise after a prison riot or

in the face of prison attacks.  Noble v. Adams , 636 F.3d 525, 529 (9th Cir. 2011) (it is not clearly

established "precisely how, according to the Constitution, or when a prison facility housing

problem inmates must return to normal operations, including outside exercise, during and after a

state of emergency called in response to a major riot...."); id., citing Norwood v. Vance, 591 F.3d

1062 (9th Cir. 2010), for the proposition that courts defer to the judgment of prison officials "so

long as the judgment does not manifest either deliberate indifference or an intent to inflict harm."

1    Plaintiff is insistent that he never received any form of outdoor exercise for a six-

2  week period.  He also maintains that defendants' representation in the ICC chrono he produced

3  that he was to have walk-alone yard is simply unsupported by what occurred.  While plaintiff

4  during part of this period was being held in Ad Seg for his allegedly having participated in a riot

5  (an allegation later discharged as he had apparently been a victim of an unprovoked attack), even

6  during that time in Ad Seg, there appears to have been no reason why he should not have

7  received the walk-alone yard to which defendants purportedly assigned him and if he was so

8  assigned by defendants and yet did not receive access to any form of yard, such an omission

9  makes out a claim for deliberate indifference.  Under these circumstances, plaintiff's allegations

10  rise to the level of a clearly established Eighth Amendment violation to which defendants do not

11  show entitlement to qualified immunity.

12    Accordingly, IT IS ORDERED that a district judge be randomly assigned to this

13  case.

14    IT IS HEREBY RECOMMENDED that defendants' September 7, 2010 (docket #

15  30), motion to dismiss be granted for plaintiff's failure to exhaust administrative remedies as to

16  defendant Zamudio and this defendant be dismissed, and denied as to defendants Forrester, Hill

17  and Walker.

18    These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within fourteen days after service of the objections.  The parties are

24  \\\\

25  \\\\

26  \\\\

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 05/23/2011

/s/ Gregory G. Hollows

_____

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
harr1523.mtd

15