UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS, | No. 2:09-cv-1523 LKK AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| L. ZAMUDIO, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S. § 1983. Pending before the court are: (1) defendants' motion for summary judgment (ECF No. 67); and (2) plaintiff's motion for summary judgment (ECF No. 72). The motions are fully briefed.

PLAINTIFF'S ALLEGATIONS

This matter proceeds on plaintiff's second amended complaint against Associate Warden James Walker, Facility Captain R. Hill and Correctional Captain B. Fosterer, all of California State Prison- Sacramento.[1] SAC, ECF No. 19. Plaintiff alleges that defendants Walker, Forsterer and Hill deprived him of outdoor exercise from June 23, 2005 until August 4, 2005, a period of six weeks. Upon his return to the institution from an outside hospital after a prison stabbing assault, plaintiff was placed in the administrative segregation unit (ASU). The defendants were

---

[1] Plaintiff's claim against defendant Zamudio alleging a failure to protect has been dismissed. See Order, ECF No. 48, filed on September 21, 2012.

members of a classification committee responsible for classifying plaintiff and assigning him to a yard group so that he could receive outdoor exercise, but failed to do so. This deprivation was a violation of plaintiff's Eighth Amendment rights. SAC (ECF No. 19), pp. 7-13. Plaintiff seeks damages and declaratory relief. Id., at 3.

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the ground that they did not violate the Eighth Amendment and are entitled to judgment as a matter of law. ECF No. 67. Defendants contend both that they are not responsible for plaintiff's deprivation of outdoor exercise, and that they did not act with deliberate indifference. Plaintiff moves for summary judgment against the defendants, contending that undisputed evidence shows defendants deprived him of outdoor exercise in violation of the Eighth Amendment. ECF No. 72 at 8.

I. <u>Legal Standard for Rule 56 Motions</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Plaintiff has been provided notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.1988), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012). ECF Nos. 25, 67-1.

II.     Undisputed Facts

The following facts are undisputed by the parties:[2]

- Plaintiff was in CDCR[3] custody and housed at California State Prison, Sacramento (CSP-Sac) during the time relevant to this case.
- Plaintiff was injured in a June 2005 riot at CSP-Sac and was transported to a hospital.
- Upon his return from the hospital on June 23, 2005, plaintiff was placed on administrative segregation status as a "threat to safety and security of the institution" and placed in the Correctional Treatment Center (CTC).
- Between June 23, 2005 and June 29, 2005, an Investigative Services Unit (ISU) officer, engaged in a fact-finding inquiry, interviewed plaintiff while he was in the CTC.

---

[2] See ECF No. 67-3 at 1-3 (defendants' statement of undisputed facts in support of motion for summary judgment [DSUF]); ECF No. 72 at 11-18 (plaintiff's statement of undisputed facts [in support of cross-motion for summary judgment-PSUF]), 28-30 (plaintiff's "admissions" in response to DSUF); ECF No. 73-1 at 1-5 (defendants' response to PSUF).
[3] California Department of Corrections and Rehabilitation.

4

- On June 24, 2005, defendant Hill reviewed the segregation order, retained plaintiff in the ASU pending review, and placed him on double cell status.
- The Institutional Classification Committee (ICC) is responsible for reviewing an inmate's placement into the Administrative Segregation Unit (ASU) within ten days of the inmate's being received into the unit. After reviewing the inmate's placement in ASU, the committee issues a CDCR form 128G that explains the action taken by the committee and the basis for that action.
- Defendants Walker, Fosterer and Hill have no personal knowledge of plaintiff's refusal to attend the June 29, 2005 ICC hearing.
- Other than plaintiff's alleged refusal to attend the June 29, 2005 ICC hearing, plaintiff has never refused to attend ICC hearings including, but not limited to, on eight (8) different occasions.
- In the ICC hearing allegedly held on June 29, 2005, defendants Walker, Forsterer, and Hill did not make a determination regarding the likelihood of plaintiff's decompensation if retained in the ASU per Cal. Code of Regs., Title 15 § 3375 (g)(4)(A) for inmates under mental health treatment.
- On June 29, 2005, plaintiff was moved from the CTC to the ASU in Facility A.
- Plaintiff's placement in the ASU on single cell status, while serving a life sentence in his first prison term with a disciplinary action pending and with the recent trauma of the stabbing, presented risks factors for suicide; regular exercise is a protective factor.
- Inmates had to be classified for an exercise program to receive yard while in the ASU.
- Plaintiff, while under mental health treatment, always went to Interdisciplinary Treatment Team the Tuesday before ICC.
- On July 5, 2005, plaintiff attended Interdisciplinary Treatment Team and his psychologist, Baxter, told him he would be going to ICC the next day.
- On July 27, 2005, plaintiff attended an ICC hearing and was removed from ASU

5

status because he was found not guilty of the Rules Violation Report (RVR) he had received on June 14, 2005.[4]

- On July 29, 2005, plaintiff was moved to general population housing.
- CDCR and C-Sac policy during the relevant period required that ASU inmates be afforded ten hours of yard time per week.
- Plaintiff did not receive outdoor exercise while he was in the ASU from June 29, 2005, until July 29, 2005.
- There were no safety or security reasons which prevented plaintiff from receiving yard during the relevant time.
- Defendants Walker, Fosterer and Hill could have taken additional steps to ensure plaintiff received the proper exercise program if aware he was not receiving it.
- Plaintiff periodically suffered from anxiety while he was in the ASU which caused shortness of breath, chest pain, and dizziness.
- On August 8, 2005, Lt. Moreno [a non-party] found plaintiff guilty of "Refusing a direct Order" for not having taken a cellmate on July 11, 2005.

III.  Disputed Facts

- The Second Amended Complaint alleges that plaintiff's total period of exercise deprivation was June 23, through August 4, 2005. ECF No. 19 at 10, ¶ 30. Defendants' Answer denies this allegation. ECF No. 56 at 1, ¶ 2. The motions for summary judgment do not address specific dates outside plaintiff's formal ASU term of June 29 through July 29, 2005.
- Defendants contend that plaintiff refused to appear at the ICC hearing on June 29, 2005. ECF No. 67-3 at 2, ¶ 6. Plaintiff contends that he was unaware of an ICC hearing on June 29, 2005 and never refused to attend. ECF No. 72 at 30-31. Plaintiff disputes the accuracy of the CDCR form 128G chrono that documents the alleged hearing. Id.

---

[4] This RVR, Log # C-05-06-034, was for participation in a riot, the incident in which plaintiff suffered injuries requiring his hospitalization. See ECF No. 19, SAC, Ex. A, at 15-17.

6

- Defendants contend that the ICC ordered 10 hours a week of walk-alone yard time for plaintiff while he was in ASU, as documented by the CDCR form 128G dated June 29, 2005.  ECF No. 67-3 at 2, ¶ 8.  Plaintiff contends that ICC never ordered walk-alone yard, and disputes the authenticity of the chrono.  ECF No. 72 at 31.

IV.  Legal Principles Governing Eighth Amendment Claim

"The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to 'provide humane conditions of confinement.'" Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  "[T]he deprivation of a single, identifiable human need such as food, warmth, or exercise" may constitute an Eighth Amendment violation.  Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Exercise is one of the most basic human necessities protected by the Eighth Amendment.  Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th Cir. 1993).

A claim that prison officials have deprived an inmate of humane conditions must meet two requirements, one objective and one subjective.  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1995)).  To meet the objective requirement, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Although a temporary denial of outdoor exercise will not be considered an objectively substantial deprivation unless accompanied by adverse medical effects, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997), the extended denial of outdoor exercise constitutes a substantial deprivation even without such effects.  Lopez, 203 F.3d at 1133 & n. 15.  A deprivation of six weeks is "long term" and satisfies the objective requirement without a showing of adverse medical effects.  Id.

The subjective component relates to the state of mind of the defendant(s), and requires deliberate indifference.  Foster, 554 F. 3d at 812 (inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety").  "To establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the

7

1  risk." Id. at 814 (citing Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir.2000)). "'[T]he official
2  must both be aware of facts from which the inference could be drawn that a substantial risk of
3  serious harm exists, and he must also draw the inference.'" Richardson v. Runnels, 594 F.3d 666,
4  672 (9th Cir. 2010) (quoting Farmer, 511 U.S. at 837). Subjective knowledge of a risk may be
5  inferred from the obviousness of the risk. Thomas v. Ponder, 611 F.3d at 1150 (citing Farmer,
6  511 U.S. at 842).

   V. <u>Objective Component: Seriousness of Deprivation</u>

It is expressly undisputed that plaintiff was deprived of all outdoor exercise while he was in the ASU from June 29, 2005 until July 29, 2005. Plaintiff alleges that he received no exercise for a total of six weeks, from his return to CSP-Sac on June 23, 2005 until yard access was restored upon his return to general population on August 4, 2005. SAC at 10. Defendants have pointed to no evidence that plaintiff actually received yard time during that extended period. It is undisputed that plaintiff presented no security or safety concern that would have precluded his being allowed yard exercise.

The Ninth Circuit has found objectively serious deprivations of human necessities where prisoners were deprived of outdoor exercise for periods of as little as six weeks. Allen v. Sakai, 48 F.3d at 1086-88 (six weeks of confinement with only 45 minutes of exercise per week objectively serious); Lopez, 203 F.3d at 1132-1133 (six and a half weeks with no access to outdoor exercise objectively serious); see also Thomas v. Ponder, 611 F.3d at 1151 (recognizing that under circuit law, deprivations of more than six weeks are objectively serious). In Lopez, the en banc court reversed a panel decision that had found a six and a half week denial of yard not to be objectively serious. Lopez, 203 F.3d at 1133 n.15. Lopez forecloses summary judgment for defendants on the objective prong of plaintiff's Eighth Amendment claim.[5]

---

[5] Defendants cite LeMaire v. Maass, supra, for the proposition that a four year deprivation of outdoor exercise does not violate the Eighth Amendment where an inmate presents a risk to others. LeMaire did not turn on the question whether the deprivation by its duration was objectively serious enough to implicate the Eighth Amendment, but on the distinct question whether the deprivation was reasonable in light of the circumstances. LeMaire, 12 F.3d at 1458. That inquiry goes to the subjective component of the claim, regarding the defendants' state of mind. Id.; see also Thomas, 611 F.3d at 1150, 1151.

8

1  Plaintiff demonstrates that he was a mental health participant.  It is undisputed that he
2 suffered from some anxiety while in the ASU which caused shortness of breath, chest pain, and
3 dizziness.  It is also undisputed that plaintiff's circumstances presented a suicide risk while he
4 was in ASU, and that exercise is a protective factor.  These facts highlight the existence of a
5 triable fact on the seriousness of the deprivation plaintiff suffered.  These facts do not, however,
6 conclusively resolve the question whether the deprivation was objectively serious for Eighth
7 Amendment purposes.  Accordingly, neither party is entitled to summary judgment on the
8 objective prong.

## VI. Subjective Component: Deliberate Indifference

The deliberate indifference analysis involves a two-part inquiry into the culpability of the defendants' state of mind.  The first question is whether defendants were subjectively aware of the risk to plaintiff's health and safety, and the second is whether there was a reasonable justification for the deprivation.  Thomas, 611 F.3d at 1150-51.  The latter question is not pertinent to the case at bar, as defendants acknowledge that there was no safety or security reason to limit plaintiff's yard access.  Instead, they contend that they were unaware that plaintiff was being denied yard access.

Defendants seek summary judgment on grounds that they held a timely ICC hearing on June 29, 2005, as reflected in the 128G chrono bearing that date, in which plaintiff was placed on walk-alone yard status that should have resulted in him receiving ten hours of yard per week.  Defendants in essence maintain that their obligation was discharged at that point.  While they acknowledge that they could have taken steps to remedy any subsequent failure to provide the yard time, they declare they did not know that plaintiff was not receiving the yard time they had authorized.  However, plaintiff raises troubling questions regarding the events of June 29, 2005 and the reliability of defendant's evidence that they authorized yard time on that date.

The 128G chrono reads as follows:

> Committee Action Summary: RETAIN IN AD SEG PENDING ADJUDICATION OF RVR LOG # C-05-06-034.  SET CUSTODY AT MAX S. WG/PG DI/D EFFCTIVE 6/23/05.  RETAIN ON SINGLE CELL.  RETAIN ON WALK ALONE YARD.  REFER TO CSR FOR A 60 DAY AD SEG EXTENSION.

9

> Committee Comments: Inmate HARRIS declined to appear before California State Prison, Sacramento's (SAC's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his initial ASU Review and therefore ICC was held in absentia. HARRIS did receive his 72-hour notice for the purpose of this review. According to HARRIS' CDC 114D, he was place into SAC's ASU on 6/23/05 for : S was transported to SAC Medical Center on 6/14/05 after a Riot in C-FAC. Upon S's arrival back to CSP-SAC from SAC MED Center S is being placed in ASU for Participation in a Riot.
>
> Based upon a review of HARRIS' CDC 114D, CDC 115, Central File, and case factors committee elects to: Retain in AD SEG pending adjudication of RVR Log # C-05-06-034. Set custody at MAX S WG/PG D1/D effective 6/23/05. Retain on single cell. Retain on Walk Alone yard. Refer to CSR for a 60 Day AD SEG extension.
>
> RVR dated 6/14/05, Log # C-05-06-034 for Participation in Riot, has been adjudicated and S was found guilty. If found guilty, projected MERD of 8/22/05 noted. This RVR is not a PC 2933.6 offense.
>
> Additional Comments: S's case was reviewed in absentia.
>
> Inmate Comments: No comments made due to case reviewed in absentia.
>
> At the conclusion of this review, HARRIS will be informed of his Appeal Rights with regards to this committee's actions.
>
> STAFF ASSISTANT: Discharged (Participant in MHSDS but able to comprehend issues). Discharge Date: 6/29/05.

ECF 67-4 at 22.

Plaintiff contends that this chrono is "forged." In the typical case, a plaintiff inmate is unlikely to defeat summary judgment with an uncorroborated assertion that a prison record has been fabricated or post-dated. Here, however, plaintiff identifies both inconsistencies within the chrono and extrinsic evidence that call its reliability into doubt.

First, the chrono itself erroneously states that plaintiff had been found guilty of the RVR which was the cause of his administrative segregation. ECF No. 67-4 at 22 ("RVR dated 6/14/05, Log # C-05-06-034 for Participation in Riot, has been adjudicated and S was found guilty.") As indicated elsewhere on the chrono, the RVR had not yet been adjudicated on June 29, 2005. Defendants argue that this discrepancy is merely a "typo" without significance. If this were the only problem with the chrono, that explanation might be persuasive. But it is not.

The chrono indicates that plaintiff was absent from the hearing because he refused to attend. Plaintiff denies under penalty of perjury that he refused to attend, and further declares that he was never informed of the hearing. Defendants present no evidence other than the chrono itself to support their contention that plaintiff was notified and refused to participate. None of the defendants, who submitted declarations in support of their motion for summary judgment, were percipient witnesses to the notice and/or refusal. Defendants have not provided any documentation of the refusal by the custody officer who witnessed it.[6] Moreover, plaintiff has produced evidence that he had never previously refused to attend an ICC hearing and was usually actively engaged in the classification process. Defendants do not dispute this, nor do they dispute that plaintiff regularly attended Interdisciplinary Treatment Team meetings prior to ICC hearings, and that he did so on July 5, 2005. Defendants do not dispute that on July 5 plaintiff's psychologist told him at an Interdisciplinary Treatment Team meeting that he would be going to ICC the next day. ECF No. 73-1 at 4. However, the only chronos in the record before the court that document actual (or, per plaintiff, purported) ICC meetings are dated June 29 and July 29, 2005.

Plaintiff points to a CDCR form 262 (custody classification summary) entry dated June 29, 2005, which reports that the inmate "agreed" with the ICC decision of that date. See ECF No. 67-4 at 34. This notation is patently inconsistent with the representation in the chrono that plaintiff had no comments regarding the classification decision because the case was reviewed in absentia.

Plaintiff also points to the Rules Violation Report (RVR) that he received on July 11,

---

[6] When an inmate refuses to attend a disciplinary hearing he must waive in writing his right to be present. If the inmate refuses to sign a waiver, the custody officer witnessing the refusal must document the refusal on a CDCR Form 128-B. 15 Cal. Code Regs. §3320 (g)(3). The rules applicable to initial classification hearings regarding administrative segregation provide that the inmate must be present except "under the applicable conditions as described in section 3320 (g) of the Secretary's rules relating to disciplinary hearings." 15 Cal. Code Regs. §3338(c). Defendants argue that these regulations do not require a 128-B general chrono to be prepared whenever an inmate refuses to attend ICC. Because the June 29, 2005 hearing was plaintiff's initial administrative segregation hearing, the plain language of the regulations would appear to require such documentation. The present issue, however, is not what the regulations require but whether there is a triable issue of material fact regarding the June 29, 2005 hearing.

11

2005 for refusing a cell-mate. ECF No. 72-1 at 2. The fact that plaintiff was found guilty of this disciplinary violation is undisputed. Plaintiff makes the perfectly sensible point that if on July 11 his file contained a chrono requiring single cell status, he would not (or at least should not) have faced discipline for refusing a cell-mate. Indeed, the July 11 RVR specifies that Officer Vasquez considered plaintiff available for double-celling *after reviewing plaintiff's records* and noting that he had been cleared for double cell housing on June 23, 2005. ECF No. 72-1 at 2. There is no mention of any chrono dated June 29 (or any other date after June 23). While defendants argue that this does not *prove* the file did not contain the June 29 chrono, it does support an inference that the chrono dated June 29 – which required both single cell housing and walk-alone yard time – was not in petitioner's file on July 11. Officer Vasquez was reviewing the file specifically to confirm plaintiff's cell status, so a rational trier of fact could infer that he looked for the most recent and therefore operative chrono.

Defendant Fosterer declares that CDCR forms 128G, documenting ICC decisions regarding inmate programming, are sent to the housing unit officers so that the unit sergeant can document the inmate's yard program on the CDCR form 114-A logbook. ECF No. 67-4, Fosterer Dec., ¶ 3. No evidence before the court demonstrates that plaintiff's yard program from the June 29, 2005 chrono was so documented.

Further, it is undisputed that defendants did not on June 29, 2005 (or at any other time during plaintiff's ASU term, as far as the court can determine on the present record) assess the likelihood that plaintiff, as an inmate under mental health treatment, would decompensate if retained in ASU. Such assessment is required by 15 Cal. Code Regs. § 3375(g)(4)(A).[7] Although defendants' failure to comply with this regulation is not directly relevant to the dispute over

---

[7] Pursuant to 15 Cal. Code Regs. § 3375 (g)(3), when an inmate participating in the Mental Health Services Delivery System (MHSDS) is in segregated housing, a clinician is required as a committee member at all hearings and documentation of the inmate's mental health status and treatment needs is required. Cal. Code of Regs., Title 15 § 3375 (g)(4)(A) requires that "[i]n all hearings when the inmate is treated under the MHSDS and is housed in segregated housing," in addition to the documentation required by subsection 3375(g)(3), "[a] clinical assessment of the inmate's likelihood of decompensation if retained in segregated housing" must also be documented.

12

exercise, the irregularity weighs against any presumption of regularity as to other matters ostensibly determined by the ICC on June 29, 2005. It also supports an inference of indifference to plaintiff's needs, as the form 128G plainly reflects the committee's awareness that plaintiff was a mental health services recipient.

Finally, plaintiff provides an inmate appeal that he filed on July 20, 2005, in which he complained that he had not been seen by the ICC for a segregation hearing or for any other reason since his placement in ASU after returning from the hospital on June 23. ECF No. 72-1 at 18. This appeal was granted in August, after plaintiff had been released from ASU. Id. at 19. Defendants argue here that the appeal was granted only in the sense that the requested relief had already been provided, and not because plaintiff was correct that he had never been seen by the ICC. The appeal response does not so state, however. It says both that the appeal was granted and that the inmate had been released on July 27 (the same day that the appeal was assigned to a reviewer), but does not indicate that the appeal is "granted" only insofar as the inmate has been released from ASU. Id. The granting of the appeal does not, as plaintiff would have it, conclusively demonstrate that there had been no ICC hearing. The fact of the appeal itself, however, corroborates plaintiff's claim that he did not know about the June 29 hearing or receive a copy of the chrono until after he was released from ASU.

The pattern of irregularities and inconsistencies presented by this record makes it impossible for this court to accept the ICC chrono dated June 29, 2005 at face value. There is a material factual dispute whether the defendant ICC members acted with the constitutionally mandated level of care for plaintiff's exercise needs. While plaintiff has not demonstrated that the defendants deliberately deprived him of exercise, or otherwise established that undisputed facts entitle him to judgment as a matter of law, neither have defendants demonstrated with undisputed evidence that they satisfied their obligations and/or had no reason to think that plaintiff was not receiving yard time. The conflicting evidence described above is susceptible, when interpreted in the light most favorable to plaintiff, to the inference that defendants failed to follow procedures governing the initial classification hearing and, at the very least, failed to properly document and communicate plaintiff's entitlement to yard time.

Indeed, whether the ICC hearing actually took place on June 29, 2005, is itself subject to dispute on this record.[8]  Even if the committee members met on that date, there remains a triable question whether the yard assignment was communicated to plaintiff's housing unit or placed in plaintiff's central file.  A jury could find that it was not, and that defendants' failure to do so was the cause of plaintiff's undisputed deprivation of yard time.  Defendants argue that no evidence supports an inference that any errors were made with deliberate indifference to plaintiff's welfare.  The court disagrees.  The defendants' failure to comply with the regulations governing plaintiff's mental health needs in ASU could support an inference of deliberate indifference to his needs more generally.  This is particularly so in light of the undisputed link between regular exercise and mental health for inmates in segregation.

Because plaintiff has identified material factual disputes regarding both the objective and subjective prongs of his Eighth Amendment claim, defendants are not entitled to summary judgment.  Because the same disputed facts go directly to the essential elements of plaintiff's claim for relief, he is also not entitled to summary judgment.

Accordingly, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 67) be denied;

2. Plaintiff's motion for summary judgment (ECF No. 72) be denied; and

3. This matter proceed to trial.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are

---

[8] The declarations of defendants Walker, Hill and Fosterer each state that the declarant has reviewed the chrono dated June 29, 2005 and is "confident that it is an accurate summary of the action taken by the committee on that date." ECF No. 67-4 at 19 (Fosterer Decl.); id. at 27 (Hill Decl.); id. at 32 (Walker Decl.).  No defendant or other ICC participant, however, claims to actually recall the disputed ICC hearing or any of the surrounding circumstances.

1 | advised that failure to file objections within the specified time may waive the right to appeal the
2 | District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: June 16, 2014

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE